FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 17, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LISA MARIE MCCULLOUGH,<br><br>                              Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                              Defendant. | NO:  2:17-CV-00056-FVS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 14 and 18.  This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney Jeffrey Schwab. The defendant is represented by Special Assistant United States Attorney Daphne Banay.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 18, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 14.

ORDER ~ 1

## JURISDICTION

Plaintiff Lisa Marie McCullough protectively filed for supplemental security income and disability insurance benefits on March 26, 2012.  Tr. 286-94.  Plaintiff alleged an onset date of August 1, 2010, which was amended at the first hearing to February 1, 2012.  Tr. 35, 286, 289.  Benefits were denied initially (Tr. 170-85) and upon reconsideration (Tr. 188-200).  Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Marie Palachuk on November 14, 2013.  Tr. 32-72.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits (Tr. 142-63); but on May 6, 2015, the Appeals Council vacated the decision and remanded the case for further proceedings (Tr. 164-69).  Plaintiff subsequently appeared for a hearing before ALJ Marie Palachuk on October 7, 2015.  Tr. 73-103.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits (Tr. 9-31), and the Appeals Council denied review.  Tr. 1.  The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only the most pertinent facts are summarized here.

Lisa Marie McCullough ("Plaintiff") was 41 years old at the time of the first hearing. Tr. 37. She attended community college, but did not complete the two year degree. Tr. 38-42. In 1988, Plaintiff lives with her ex-boyfriend, and has three children all over the age of 18 that do not live with her. Tr. 46, 53. She was incarcerated previously, and reported she was released in 2001 and then in 2004. Tr. 50-52. Plaintiff has work history as a general clerk, waitress, bartender, cashier, and retail sales clerk. Tr. 37-38, 59, 69-70. Plaintiff testified that she stopped working and going to school because of an increase in symptoms from her seizures and the migraines, and sexual harassment in the workplace. Tr. 38-42, 48.

Plaintiff testified that when she left school she was having at least one seizure a day, and grand mal seizures two or three times a week. Tr. 43-44. At the second hearing, it was noted that Plaintiff was off seizure medication, and the medical expert testified she was seizure free. Tr. 78, 81, 96. Plaintiff testified that she has migraines daily, and at least once a week has a migraine so severe that she has to go into dark room for 12-14 hours because she "can't handle the lights and the noise." Tr. 47-48, 91-92. She reported suffering from anxiety and was put on medication but stopped due to side effects. Tr. 54-55. At the second hearing, Plaintiff testified that she was using a walker for her fibromyalgia and "falling over" which was happening at least twice a day. Tr. 90. On a "normal day," Plaintiff reported at the first hearing that she watches television, tries to do laundry

and clean, cooks only in the microwave, and sews quilts; and at the second hearing she testified that she watches television, cleans the bathroom and does dishes, does some grocery shopping with a friend, and tries to do an adult coloring book.  Tr. 51-52, 95-96.  Plaintiff alleged disability due to seizures, migraines, asthma, and diabetes.  *See* Tr. 170, 188.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the

ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that she is not only unable to do his previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

§§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 1, 2012, the alleged onset date. Tr. 15. At step two, the ALJ found Plaintiff has the following severe impairments: mild asthma, mild obesity, migraines, possible seizures, mild degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; non-cardiac chest pain, fibromyalgia, obstructive sleep apnea, diabetes mellitus with mild neuropathy, myoclonic jerks left greater than right. Tr. 15. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of a listed impairment.  Tr. 17.  The ALJ then found

that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except: lifting and carrying 20 pounds occasionally, 10 pounds frequently;
> sitting unlimited; standing and walking is limited to thirty minutes at a time,
> two hours a day; she would need to use a cane in her right hand for balance;
> never ladders, ropes, and scaffolds, and never balancing; occasional all other
> postural activities, such as stairs; she should avoid concentrated exposure to
> extreme temperatures, wetness, industrial vibration, noise, and respiratory
> irritants; avoid all exposure to hazards; the claimant may have one absence
> per month related to symptoms.

Tr. 18-19.  At step four, the ALJ found that Plaintiff is unable to perform any past

relevant work.  Tr. 24.  At step five, the ALJ found that considering Plaintiff's age,

education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform, such as ticket seller,

storage facility rental clerk, call-out operator, and cashier II.  Tr. 24-25.  On that

basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in

the Social Security Act, from February 1, 2012, through the date of the decision.

Tr. 26.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability benefits under Title II and supplemental security income benefits

under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the

following issues for this Court's review:

1    1.   Whether the ALJ properly weighed the medical opinion evidence; and

2    2.   Whether the ALJ erred at step five.

3                                          **DISCUSSION**

4    **A. Medical Opinions**

5            There are three types of physicians: "(1) those who treat the claimant

6    (treating physicians); (2) those who examine but do not treat the claimant

7    (examining physicians); and (3) those who neither examine nor treat the claimant

8    [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

9    *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001)(citations omitted).

10   Generally, a treating physician's opinion carries more weight than an examining

11   physician's, and an examining physician's opinion carries more weight than a

12   reviewing physician's. *Id.* If a treating or examining physician's opinion is

13   uncontradicted, the ALJ may reject it only by offering "clear and convincing

14   reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d

15   1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's

16   opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

17   providing specific and legitimate reasons that are supported by substantial

18   evidence." *Id.* (citing *Lester,* 81 F.3d at 830–831). "However, the ALJ need not

19   accept the opinion of any physician, including a treating physician, if that opinion

20   is brief, conclusory and inadequately supported by clinical findings." *Bray v.*

*Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009)(quotation and citation omitted). Plaintiff argues the ALJ erroneously considered the opinions of medical expert Dr. Lynne Jahnke, and treating physician Dr. Luther Thompson. ECF No. 13 at 14-17.

As an initial matter, Plaintiff limits her argument regarding these medical opinions solely to their assessment of Plaintiff's absenteeism; thus, the Court will do the same. In November 2013, Plaintiff's treating physician Dr. Thompson, noted Plaintiff was diagnosed with intractable migraine, brachial neuritis, lumbar radiculopathy, degenerative disc disease of the lumbosacral, myalgia/myositis, chronic pain, insomnia, and seizure disorder. Tr. 637. Dr. Thompson checked the "yes" box indicating that Plaintiff "is likely to miss work or leave early at least 2-3 days per month due to flare-ups of symptoms;" and further opined in his narrative that "it was reasonable to expect [Plaintiff] to miss 2-3 days per week because of her migraines, and other conditions." Tr. 637-38. The ALJ accorded Dr. Thompson's opinion little weight. Tr. 23. At the second hearing in October 2015, Dr. Jahnke opined that Plaintiff may miss one day of work per month due to her migraines. Tr. 22, 85. The ALJ specifically noted that Dr. Jahnke disagreed with Dr. Thompson's assessment that Plaintiff would miss 2-3 days per; and granted Dr. Jahnke's opinion "great weight." Tr. 22-23.

Plaintiff generally contends that the ALJ failed to grant proper weight to treating provider Dr. Thompson, "particularly with regard to absenteeism;" and erred in relying on the testimony of medical expert Dr. Jahnke. ECF No. 14 at 4-8. However, while an ALJ generally gives more weight to a treating doctor's opinion than to a non-treating doctor's opinion, a non-treating doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *See Thomas,* 278 F.3d at 957; *Orn,* 495 F.3d at 632–33. Here, Plaintiff argues it was error for the ALJ to rely on Dr. Jahnke's opinion, because of several alleged "suppositions she makes and her unfamiliarity with key details in the record." [1] First, Plaintiff contends that Dr. Jahnke's

---

[1] In addition to the arguments addressed above, Plaintiff asserts that Dr. Jahnke "clearly appeared to misunderstand the markings on the [migraine] diary ledger sheet, confusing days and severity." ECF No. 14 at 6 (citing Tr. 87-89). Plaintiff is correct that Dr. Jahnke appeared to momentarily confuse the days and severity when examining the migraine diary ledger sheet during the hearing; however, the initial confusion was quickly dispelled during the hearing, and Dr. Jahnke opined, based on the correctly identified level of pain reported by Plaintiff in those diaries, that she would not be expected to miss more than one day of work per month. Tr. 89. The Court is unable to discern, nor does Plaintiff identify, how this brief

testimony that Plaintiff is "on lots of medicine and [her migraines] seem fairly well-controlled" is not supported by the record. ECF No. 14 at 5-6. In support of this argument, Plaintiff relies on her own reports to medical providers in 2013 that she experienced "no benefit" or "not much help" from Botox treatment for migraines; reported side effects of nausea and depression when taking Topomax for migraines; November 2013 reports of bilateral headaches with photophobia and nausea; May 2013 reports that her headaches were getting worse; 2013 descriptions of her headaches as "persistent" and "intractable;" and January 2013 clinical notes that her headaches did not improve in frequency or intensity. ECF No. 14 at 5-6 (citing Tr. 547, 567, 597, 610-12, 655).

However, the record also contains substantial evidence consistent with Dr. Jahnke's opinion that Plaintiff's migraines were "fairly well controlled." Tr. 85. As noted by Defendant, (1) the same treatment notes cited by Plaintiff to support her argument also contains ongoing evidence that Plaintiff's headaches improved with medication including Botox, Lamotrigine, and Verapamil; (2) Plaintiff reported in her October 2012 headache diary that she only had four headaches in

misunderstanding was improperly considered by the ALJ in weighing Dr. Jahnke's opinion. *See Andrews*, 53 F.3d at 1041 (ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity).

that month, and only one of the headaches was severe; and (3) clinical notes indicate that Plaintiff's "headaches persist, although she does have a decrease in the frequency." ECF No. 18 at 7-8 (citing Tr. 20, 487, 493, 541, 547, 550, 610, 647). Further, as noted by the ALJ, in January and April 2014, Plaintiff reported that medication has helped with her headache "intensity and duration, although the frequency of her symptoms is unchanged;" and "objective studies have been largely normal, including head CT scans, brain MRIs and EEG studies." Tr. 20, 407, 459, 476, 647, 669, 702. Finally, in October 2012, Dr. Gordon Hale opined that Plaintiff was capable of light work with limited postural activities, with no reference to any absenteeism. Tr. 126-30. Based on the foregoing, and despite evidence cited by Plaintiff that could be considered more favorable to her, the Court finds Dr. Jahnke's assessment that Plaintiff's migraines were "fairly well controlled" on medication is supported by the overall record. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("[W]here evidence is susceptible to more than one rational interpretation, it is the [ALJ's] conclusion that must be upheld.").

Second, Plaintiff takes issue with Dr. Jahnke's testimony regarding the severity of Plaintiff's migraines based on how often she reported to the emergency room for treatment. ECF No. 14 at 6. At the hearing, Dr. Jahnke relied on medical evidence, discussed in detail above, indicating that while Plaintiff's migraines had

not decreased in frequency, they had decreased in severity.  *See* Tr. 85, 550.  The

following exchange then transpired between Plaintiff's attorney and Dr. Jahnke:

> ATTY: Do we know how significant the decrease is?  It still looked to me
> like she was still suffering substantially from these headaches.
>
> DR. JAHNKE: Well, yeah.  I think she does have chronic daily headaches.  I
> think that I mean sort of another way I can – I assess the severity of
> migraines is do they go to the ER?  Is it so bad that they need treatment?
> And she does not go to the ER for her migraines, her headaches.  So that
> tells me they're not so severe that she couldn't be at work or be up and
> about.
>
> ATTY: Even before the treatment regimen was begun early in the record
> didn't look like she was going to the ER, correct?
>
> DR. JAHNKE: Correct.
>
> ATTY: Is it possible that she's simply sequestering herself fin a dark room,
> that kind of thing?
>
> DR. JAHNKE: It's possible, but I don't see any notes documenting that.
>
> ATTY: Okay.
>
> DR. JAHNKE: Doctors would usually remark on that.
>
> ATTY: Okay.
>
> DR. JAHNKE: The number of times, et cetera.

Tr. 85-86.  The ALJ granted great weight to Dr. Jahnke's opinion that Plaintiff

would only miss one day of work per month, as opposed to the 2 or 3 days a week

opined by Dr. Thompson; based, at least in part, on Dr. Jahnke's finding that the

lack of emergency visits showed "decreased severity of migraines."  Tr. 22-23.

Plaintiff generally argues that "the idea that a migraine is not severe unless one reports to an emergency room lacks any known authority." ECF No. 14 at 6. This argument is unavailing. "The ALJ may consider testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which the claimant complains." *Thomas*, 278 F.3d at 958-59. Thus, it was reasonable for the ALJ to rely on Dr. Jahnke's testimony regarding Plaintiff's lack of emergency treatment for her migraines as "powerful evidence regarding the extent to which she was in pain." ECF No. 18 at 10 (citing *Burch*, 400 F.3d at 681); *see also Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Plaintiff additionally asserts that "[w]hen asked about whether the severity could be implicated by Plaintiff 'sequestering herself in a dark room, that kind of thing,' [Dr. Jahnke] stated that she did not see evidence of that in the record. But as noted previously, the Plaintiff struggles with photophobia and nausea…. Such unfamiliarity with the record is troubling." ECF No. 14 at 6. However, while Plaintiff is correct that the overall record includes findings of photophobia and nausea, she fails to cite any documented medical evidence to support her claims that she sequestered herself in a dark room as opposed to seeking emergency treatment for her migraines. Rather,

"Plaintiff's assertion in this regard is misplaced because it is based on reliance on her own subjective testimony that her migraine headaches required her to isolate in a dark room and she could not handle lights." ECF No. 18 at 10 (citing Tr. 47). As noted by Defendant, Plaintiff does not specifically challenge the ALJ's reasons for finding her subjective complaints not entirely credible. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing). For all of these reasons, the Court finds the ALJ properly relied on Dr. Jahnke's testimony that Plaintiff's migraines had decreased in severity based, in part, on the lack of emergency room treatment; to support the finding that she would miss only one day of work per week.

Finally, Plaintiff argues that because Dr. Jahnke's conclusions "do not deserve any weight … [t]his then leads one to conclude that the treating provider's opinions … must be adopted." ECF No. 14 at 7-8 (citing Tr. 635-38). However, as discussed above, the ALJ did not err in considering Dr. Jahnke's opinion; moreover, even assuming, arguendo, that the ALJ erred in weighing Dr. Jahnke's opinion, the Court need not automatically accept the opinion of Dr. Thompson. Rather, the ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity. *See Andrews*, 53 F.3d at 1041. Moreover, if Dr. Thompson's treating opinion is contradicted by another doctor's opinion, as it is in this case by

Dr. Jahnke, the ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Here, Plaintiff generally argues that Dr. Thompson's opinion is supported by "substantial evidence," but Plaintiff doesn't raise any specific challenge to the reasons offered by the ALJ to support the rejection of Dr. Thompson's opinion. ECF No. 14 at 7. Thus, the Court may decline to consider the issue because it is not raised with specificity in Plaintiff's opening brief. *See Carmickle*, 533 F.3d at 1161 n.2. That said, in an abundance of caution, the Court will briefly address the specific and legitimate reasons offered by the ALJ to support the "little weight" accorded to Dr. Thompson's opinion.[2] First, the ALJ

---

[2] In addition to the reasons discussed herein, the ALJ found "the possibility exists that a doctor may express an opinion in an effort to assist a patient with whom he sympathizes for one reason[] or another. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question[] departs substantially from the evidence of record, as in the current case." Tr. 23-24. It is well-settled in the Ninth Circuit that an ALJ "may not assume doctors routinely lie in order to help their patients collect disability benefits." *Lester*, 81 F.3d at 832. Thus, to the extent the ALJ offered this statement as a reason to reject Dr. Thompson's opinion, the ALJ erred. However,

found that the "generally conservative course of treatment," and Dr. Thompson's treatment notes "dated concurrently with" the opinion in November 2013, were not consistent with the limitations assessed in his opinion. Tr. 23. In those treatment notes Dr. Thompson "explicitly remarked that [Plaintiff] 'is benefitting from opioid therapy at this time' and that she is 'doing well with her pain medications and is able to engage in her activities of daily living better because of them.'" Tr. 23 (citing Tr. 660). This "discrepancy" between Dr. Thompson's clinical notes and the severity of his medical opinion is an appropriate reason for the ALJ to not rely on his opinion regarding the claimant's limitations. *See Bayliss*, 427 F.3d at 1216. Second, the ALJ notes that Dr. Thompson's opinion "departs substantially from the evidence of record." Tr. 24. The ALJ may discredit Dr. Thompson's opinion because it is unsupported by the record as a whole and by objective medical findings. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). These were specific, legitimate, and unchallenged, reasons to grant Dr. Thompson's opinion, and in particular his assessment that Plaintiff would miss 2-3 days per week, little weight.

---

the error is harmless because the ALJ's ultimate rejection of Dr. Thompson's opinion is adequately supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

Overall, even if the evidence regarding Plaintiff's absenteeism may be interpreted more favorably to the Plaintiff, it is susceptible to more than one rational interpretation, and therefore the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679. Thus, and based on the foregoing, the Court finds the ALJ did not err in according great weight to Dr. Jahnke's testimony regarding Plaintiff's absenteeism, which was consistent with independent medical evidence in the record "showing decreased severity of migraines with medication and the lack of emergency room visits." Tr. 23; *See Thomas,* 278 F.3d at 957, *Orn,* 495 F.3d at 632–33.

**B. Step Five**

Plaintiff notes that the vocational expert testified that if Plaintiff missed three days per month, she would be precluded from all employment. ECF No. 14 at 8 (citing Tr. 101-102). However, any argument that the ALJ erred in considering this testimony at step five is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence. As discussed in detail above, the ALJ's evaluation of Dr. Jahnke's testimony and Dr. Thompson's medical opinion, were legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in assessing the RFC, including that Plaintiff would only miss one day of work per month related to her symptoms; and finding there are jobs that Plaintiff can perform at step five.

# CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly weighed the medical opinion evidence, and did not err at step five. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 18, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** May 17, 2018.

_____*s/Fred Van Sickle*_____
Fred Van Sickle
Senior United States District Judge